IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Donna J. Long, Jeffrey Taylor, Arthur F. Okelly, LaWanda A. Mullinax, Elaine Matheson, Stephen E. King, Janice Holland, Larry Harris, Joan Goldsmith, Linda C. Gilliam, Robert Gambrell, Susan B. Elliott, Anthony Davenport, Melissa Whitfield, Vonda G. Smith, Timothy M. Smith, Bonnie R. Ramey, Pamela K. Poore, Rhonda Poore, Doug E. Addis, Marty Smith, and Fred S. Wood,<br><br>            Plaintiffs,<br><br>vs.<br><br>Dunlop Sports Group Americas, Inc. a/k/a Dunlop Slazenger Group Americas, Inc., Westminster Manufacturing, LLC a/k/a Dunlop Slazenger Manufacturing, LLC,<br><br>            Defendants. | C.A. No. 8:06-294-HMH<br><br>**OPINION & ORDER** |

This matter is before the court on cross-motions for summary judgment filed by the Plaintiffs and by Dunlop Sports Group Americas, Inc. a/k/a/ Dunlop Slazenger Group Americas, Inc. and Westminster Manufacturing, LLC a/k/a/ Dunlop Slazenger Manufacturing, LLC (collectively "Dunlop") pursuant to Rule 56 of the Federal Rules of Civil Procedure. After review, the court grants Dunlop's motion for summary judgment and denies the Plaintiffs' motion for summary judgment.

## I. Factual Background

The facts in this case are undisputed. On October 31, 2005, Dunlop announced to the employees of its Westminster, South Carolina manufacturing facility ("Westminster facility")

that it had sold the facility to TaylorMade Group, Inc. ("TaylorMade"). (Def.'s Mem. Supp. Summ. J. 2.) The employees were informed that they would continue to be Dunlop employees for sixty (60) days, but were no longer required to report for work after October 31, 2005. Id. The notices informed the employees that TaylorMade, through its agent Warehouse Services, Inc. ("WSI"), would continue some operations at the Westminster facility, and that all Dunlop employees would have the opportunity to apply for new employment with TaylorMade or WSI. (Id.) The notices further informed employees that if they accepted positions with TaylorMade or WSI before the expiration of the sixty-day period on December 31, 2005, they would cease to be Dunlop employees and would no longer receive benefits from Dunlop. (Pl.'s Mem. Supp. Summ. J. 3.)

The Plaintiffs are former Dunlop employees at the Westminster facility who were hired by WSI prior to December 31, 2005. Thus, Dunlop terminated the Plaintiffs when WSI hired them. (Id. 4.) In the Plaintiffs' motion for summary judgment, they argue that Dunlop's termination of their wages and benefits violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 ("WARN Act"), and that they should have continued to receive wages and benefits from Dunlop until December 31, 2005. (Id. 7.) In contrast, in Dunlop's motion for summary judgment, Dunlop argues that § 2102(a)(1) of the WARN Act was not violated because the Plaintiffs did not experience an "employment loss," and that the Plaintiffs' claim is barred by the "sale of business" exception set forth in § 2101(b)(1) of the WARN Act. (Def.'s Mem. Supp. Summ. J. 5-8.)

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. WARN Act

The WARN Act requires certain employers to provide sixty (60) days' notice of a "plant closing" or mass layoff to "affected employees." 29 U.S.C. § 2102(a)(1) (1999). A "plant closing" is defined in pertinent part as "the permanent or temporary shutdown of a

single site of employment . . . if the shutdown results in an employment loss . . . for 50 or more employees." 29 U.S.C. § 2101(a)(2) (1999).  Thus, under the WARN Act, not every plant shutdown is a "plant closing" requiring notice.  Graphic Commc'ns Int'l Union v. Quebecor Printing Corp., 252 F.3d 296, 300 (4th Cir. 2001).  An "employment loss" must also result.  Employment loss is defined as "(A) an employment termination other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding six months, or (C) a reduction in hours of work of more than 50 percent during each month of any six-month period." § 2101(a)(6).  "Termination" has been construed as "the permanent cessation of the employment relationship."  Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16,042 (Apr. 20, 1989).

In their motion for summary judgment, the Plaintiffs assert that October 31, 2005, was the date of the "employment loss" and "plant closing," because Dunlop ceased operations at the Westminster facility on that date.  (Pl.'s Mem. Supp. Summ. J. 7; Pl.'s Reply Supp. Summ. J. 2.)  The Plaintiffs argue that Dunlop's actions on October 31, 2005, violated the WARN Act's requirement of sixty days' notice of the plant closing.  Hence, the Plaintiffs submit that Dunlop is required to pay sixty days' wages to all employees.  (Id.); see 29 U.S.C. § 2104(a) (requiring an employer who violates the WARN Act to pay back pay to employees for each day of violation).  In contrast, in Dunlop's motion for summary judgment, Dunlop argues that the Plaintiffs did not experience an "employment loss," because they voluntarily left Dunlop's employment prior to December 31, 2005, when the "employment loss," as defined by the WARN Act, occurred.  (Def.'s Mem. Supp. Summ. J. 5-6.)

The court agrees with Dunlop that the "employment loss" for Dunlop employees at the Westminster facility did not occur until December 31, 2005. Until that date, the Plaintiffs, along with all other employees at the Westminster facility, were still receiving full pay and benefits, despite the fact that they were not required to report to work. (Def.'s Mem. Supp. Summ. J. (Daiss Aff. Ex. A (WARN Act notice 1-5)).) The notices given to the Plaintiffs on October 31, 2005, specifically stated that the Plaintiffs would continue to be Dunlop employees. (Id. (Daiss Aff. Ex. A (WARN Act notice 1, 3)).)

Nothing in the WARN Act requires employees to continue to perform their previous functions throughout the notice period, and an "employment loss" can occur even though employees have previously ceased performance of job functions. See 54 Fed. Reg. 16,042 ("[N]either WARN nor the regulations dictate the nature of work to be performed--or whether work must be performed--during a period of employment after notice of an impending plant closing or mass layoff has been given."); see also Graphic Commc'ns Int'l Union, 252 F.3d at 300-01 (holding that an "employment loss" occurred on December 16, 1998, even though the employees ceased working on December 11, 1998, pursuant to a temporary shutdown). The Plaintiffs offer no support for their argument that an "employment loss" occurred on October 31, 2005, because employees were no longer required to report to the Westminster facility after that date. (Pl.'s Reply Supp. Summ. J. 3-4.) Therefore, because an "employment loss" did not occur until December 31, 2005, the "plant closing" triggering the WARN Act's notice requirement did not occur until December 31, 2005. Hence, the notice given by Dunlop on October 31, 2005, fully complied with the WARN Act.

In the October 31, 2005, notice, Dunlop informed its employees that accepting a position with TaylorMade or WSI would constitute a termination of their Dunlop employment. (Def.'s Mem. Supp. Summ. J. (Daiss Aff. Ex. A (WARN Act notice 1, 3)).) Thus, the Plaintiffs, who chose to begin work for WSI prior to December 31, 2005, voluntarily left Dunlop's employment and were therefore not entitled to further pay or benefits. See 54 Fed. Reg. 16042 (The "[Department of Labor] does not . . . agree that a worker who, after the announcement of a plant closing or mass layoff, decides to leave early has necessarily been constructively discharged or quit involuntarily.") (internal quotation marks omitted).

The WARN Act's purpose is to give "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a) (2006); see Dingle v. Union City Chair Co., 134 F. Supp. 2d 441, 444 (W.D. Pa. 2000) (holding that the purpose of the WARN Act would not support requiring notice to employees of the seller who were immediately rehired by the buyer "since there is no need for retraining or alternative jobs"). This purpose would not be served by requiring Dunlop to continue paying full wages and benefits to the Plaintiffs after they were employed by its successor, WSI, without any break in employment. Cf. Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1276 (10th Cir. 1994) (holding that a severance provision triggered by a lay-off did not apply when seller's employees were immediately re-hired by the buyer because, "[r]ather than softening the blow of a period of unemployment, it would only serve to provide [the Plaintiffs] a happy period of double income").

Therefore, in light of the purposes of the WARN Act and the fact that the Plaintiffs did not experience an "employment loss" on October 31, 2005, the court finds that Dunlop did not violate the WARN Act. Based on the foregoing, the Plaintiffs' motion for summary judgment is denied, and Dunlop's motion for summary judgment is granted.[1]

Therefore, it is

**ORDERED** that Plaintiffs' motion for summary judgment, docket number 15, is denied, and Dunlop's motion for summary judgment, docket number 14, is granted.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, SC
October 5, 2006

---

[1] Having granted Dunlop's motion for summary judgment on the grounds that no employment loss occurred until December 31, 2005, the court declines to address Dunlop's additional grounds for summary judgment.